<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERICA P.,<br><br>          Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 24-10439 (GC)<br><br>**<u>OPINION</u>** |

<u>**CASTNER, District Judge**</u>

     **THIS MATTER** comes before the Court upon Plaintiff Erica P.'s[1] appeal from the final

decision of the Commissioner of the Social Security Administration (Commissioner[2]) denying

Plaintiff's application for Disabled Adult Child (DAC) and Supplemental Security Income (SSI)

benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* After careful

consideration of the entire record, including the entire Administrative Record, the Court decides

this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b)

and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the

Commissioner's decision is **VACATED**, and this matter is **REMANDED** for further proceedings

---

[1]     Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2]     Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

consistent with this Opinion**.**

I.    <u>**BACKGROUND**</u>

    A.    **Procedural History**

Plaintiff was born on November 28, 1993, lives in Little Egg Harbor, New Jersey, and has no previous work history.  (AR 113, 246.)[3]  On June 15, 2020, Plaintiff filed applications for DAC and SSI, alleging she became disabled as of November 1, 2015.  (*Id.* at 55, 76-78, 246-270.)[4] Plaintiff alleged that she could not work due to a range of physical health conditions such as "Cro[h]n's, Chiari Correction Surgery, Seizures, Spasticity, Spinal Degeneration, Spinal Stenosis, Herniated Discs, Patellar Dislocation, Spinal Osteoarthritis, Sinus Tachycardia, Chronic Sepsis, [and] Anemia."  (*Id.* at 248.)  The applications were denied on January 8, 2021.  (*Id.* at 171-181.) Upon reconsideration, Plaintiff's claims were denied again on April 9, 2021.  (*Id.* at 185-192.) Plaintiff thereafter filed a request for a hearing before an Administrative Law Judge (ALJ).  (*Id.* at 193.)  That hearing took place on November 22, 2023.  (*Id.* at 73-111.)

On February 27, 2024, the ALJ issued Plaintiff an unfavorable decision.  (*Id.* at 52-72.) The ALJ concluded that even though Plaintiff had no past relevant work, she retained the ability to perform "other work that exists in significant numbers in the national economy."  (*Id.* at 67.) Therefore, the ALJ found that Plaintiff was "not disabled as defined in section 223(d) of the Social

---

[3]    "AR" refers to the Administrative Record, available at ECF No. 5.  This Opinion cites the internal page numbers when referring to the Administrative Record.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4]    While Plaintiff alleges the same onset date for both DAC and SSI benefits, the ALJ was only required to analyze whether Plaintiff was disabled from November 1, 2015 to November 26, 2015 for DAC benefits, and from July 1, 2020 to February 27, 2024 for SSI benefits.  *See infra* nn.7-8.

Security Act prior to November 27, 2015, the date she attained age 22" for purposes of DAC nor was she disabled "through the date of this decision" for purposes of SSI. (*Id.*)

Subsequently, Plaintiff requested a review of the ALJ's decision before the Appeals Council. (*Id.* at 1.) The Appeals Council denied that request on September 17, 2024. (*Id.* at 1-7.) Thus, the ALJ's decision became the Commissioner's final decision. (*Id.*) On November 12, 2024, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), challenging the ALJ's decision. (ECF No. 1.)

**B.      The ALJ's Decision**

The ALJ used the requisite five-step sequential evaluation process to determine that Plaintiff is not disabled. (AR 56-58.) *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-step process).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since November 1, 2015 the . . . alleged onset date." (*Id*. at 58.)[5]

At step two, the ALJ found that Plaintiff "has the following severe impairments: asthma, osteoarthritis, degenerative joint disease, degenerative disc disease, morbid obesity, dextroscoliosis, obstructive sleep apnea, irritable bowel syndrome and migraines." (*Id.*) The ALJ determined Plaintiff's other impairments, including "seizures, polycystic ovary syndrome, history of Chiari I malformation, and sinus tachycardia," were not severe. (*Id.*) The ALJ also found that Plaintiff's alleged Crohn's disease was "not a medically determinable impairment"—severe or

---

[5]      "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." *Id.* § 416.972(a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(b).

otherwise—because "there is no objective medical evidence or diagnostic testing to support this impairment." (*Id.*)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation. (*Id.* at 58-60.) *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted a residual functional capacity (RFC) assessment.[6] (AR 23-31.) The ALJ concluded that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can never climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, or crawl; can have no concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, dust, odors, fumes, or other pulmonary irritants; and the claimant cannot work with hazards such as machinery or heights.

(*Id.* at 60.) To arrive at this conclusion, the ALJ stated that she "considered all [of Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* (citing 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claim), 2016 WL 1119029 (Mar. 16, 2016)).) The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s)." (*Id.* (citing 20 C.F.R. §§ 404.1520c, 416.920c).)

In considering Plaintiff's symptoms, the ALJ stated that she must follow a two-step process. First, the ALJ must determine whether "there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's

---

[6]    Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

pain or other symptoms." (*Id.*)  Second, if there is such an impairment, the ALJ stated she would then evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities." (*Id.*)  In making this evaluation, if Plaintiff's statements about intensity, persistence, and limiting effects "are not substantiated by objective medical evidence," the ALJ stated she must consider "other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (*Id.*)

Applying these standards, the ALJ reviewed Plaintiff's testimony and medical history to find step one satisfied.  (*Id.* at 60-61.)  The ALJ then proceeded to step two and found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 61.)

The ALJ then discussed the role that medical evidence played in her RFC assessment.  (*Id.* at 61-62, 64-66.)  First, the ALJ reviewed "the objective medical evidence," including various exams and scans. (*Id.* at 61-62, 64.)  The ALJ then reviewed medical records by Dr. Ronald Bagner but did not opine to what degree she found those records persuasive. (*Id*. at 64-65.)[7]  The ALJ also reviewed records from the "State agency medical consultants" and found the State agency's "administrative findings to be persuasive to the extent they are consistent with the residual functional capacity[.]" (*Id.* at 65-66.)

Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given her age, education, lack of work experience, and RFC results.  (*Id.*

---

[7]    The ALJ erroneously refers to Dr. Bagner as "Dr. Toder"—a separate doctor who issued an X-ray included in Dr. Bagner's report—during this portion of the ALJ's opinion, (*see* AR 64-65), but "[t]his typographical error is immaterial to the outcome of the case," *Hudson v. Comm'r of Soc. Sec.*, 93 F. App'x 428, 430 & n.4 (3d Cir. 2004).

at 66-67.)  Based on hypothetical questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as "Order [C]lerk," "Telephone [Q]uotation [C]lerk," or "Charge [A]ccount [C]lerk," and provided estimates regarding the number of such jobs available in the economy.  (*Id.* at 67.)  The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles.  (*Id.*)  Therefore, the ALJ concluded that "the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (*Id.*)  As a result, the ALJ concluded that the claimant was not disabled for DAC and SSI purposes.  (*Id.*)

## II.    LEGAL STANDARD

### A.    Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted).  Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence."  *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'"  *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).  Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., [evidence] offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."  *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have

6

decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

### B.        Determining Disability

To be eligible for DAC and SSI benefits under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work, if there is work history, or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citation omitted).

### C.        Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

(1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.") (citation omitted).

## III.    DISCUSSION

Plaintiff makes five arguments in support of her appeal. First, Plaintiff argues the RFC determination is not supported by substantial evidence for (1) the DAC period because the cited evidence does not pertain to that period and (2) the SSI period because the RFC "is unsupported by the ALJ's rationale." (ECF No. 10 at 21-25.) Second, Plaintiff contends that the ALJ failed to properly evaluate the medical opinion of Dr. Ronald Bagner. (*Id.* at 16-21.) Third, Plaintiff argues that the ALJ failed to adequately consider third-party lay evidence. (*Id.* at 27.) Fourth, Plaintiff submits that the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain with respect to spinal impairments. (*Id.* at 29-33.) Finally, Plaintiff raises challenges to the ALJ's consideration of Plaintiff's obesity and migraines. (*Id.* at 26, 33-35.) On review of the ALJ's decision (*see* AR 52-67) and the Administrative Record (*see generally* ECF No. 5), the Court finds good cause to vacate and remand the Commissioner's decision.

### A.    The ALJ's Formulation of the RFC

Plaintiff raises challenges to the ALJ's step-four RFC determination for the DAC and SSI periods. The Court will address each period in turn. The relevant period for determining whether Plaintiff was disabled for DAC benefits is November 1, 2015 through November 26, 2015. (ECF No. 10 at 8 n.2; AR 67.) [8] The relevant period for SSI benefits is July 1, 2020 through February 27, 2024. (ECF No. 10 at 8 n.2.)[9]

### 1.    The DAC Period

Plaintiff argues the RFC determination is not supported by substantial evidence with respect to the DAC period because the ALJ does not rely on "any medical source opinion or prior administrative finding relating to the functional severity of the impairments during the [DAC]-related period[.]" (ECF No. 10 at 24-25.) The Commissioner responds that it is Plaintiff's burden to demonstrate she was disabled during the DAC timeframe but has failed to offer evidence from which an ALJ could make such a finding. (ECF No. 12 at 9 (citing *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020).)

---

[8]    "For an adult child to be entitled to [DAC] . . . the adult child must . . . have a disability that commenced prior to age twenty-two." *Perez v. Comm'r of Soc. Sec.*, Civ. No. 14-5551, 2016 WL 3509304, at *1 n.2 (D.N.J. June 27, 2016) (citing 20 C.F.R. § 404.350). "You reach a particular age on the day before your birthday." 20 C.F.R. § 404.102. Because Plaintiff was born on November 28, 1993, (AR 246), the ALJ must evaluate whether Plaintiff was disabled from November 1, 2015 (the alleged onset date) to November 26, 2015 (the day before Plaintiff reached twenty-two), (*id* at 56, 67).

[9]    July 1, 2020 is the month that follows Plaintiff's June 15, 2020 SSI application and February 27, 2024 is the date of the ALJ's decision. (AR 55, 63.) *See Petruchevich v. Comm'r of Soc. Sec.*, Civ. No. 18-796, 2019 WL 5587323, at *1 (D.N.J. Oct. 30, 2019) ("[A]n SSI applicant is not eligible for SSI until the month following the date of filing for benefits." (citing 20 C.F.R. § 416.335)); *Ungemach v. Comm'r of Soc. Sec.*, Civ. No. 18-04987, 2019 WL 3024858, at *1 n.5 (D.N.J. July 11, 2019) ("Even though [p]laintiff contends that her onset date of disability is June 1, 2013, the relevant period for [p]laintiff's SSI claim begins with her June 21, 2013 application date, through the date of the ALJ's decision on July 27, 2016.").

As Plaintiff acknowledges, "[a]n ALJ may determine the RFC without obtaining a medical expert opinion and is not required to rely on medical expert opinions." (ECF No. 23 at 10 (citing *Carl M. v. Kijakazi*, Civ. No. 21-1124, 2022 WL 4549833, at *10 (D.N.J. Sep. 29, 2022).) *See also Pearly v. Comm'r of Soc. Sec.*, Civ. No. 20-1738, 2021 WL 3206825, at *4 (D.N.J. July 29, 2021) ("[I]t is an open question to what extent an RFC can be supported without *any* medical opinion evidence." (emphasis in original)).  "[W]hile a supporting medical opinion may not be required in every case, the absence of such opinion heightens the need for an ALJ to adequately explain [her] reasoning in determining a claimant's RFC." *Pearly*, 2021 WL 3206825, at *4.  When the "Court is unable to identify the evidence on which the ALJ based [her] RFC findings," remand is warranted. *Id.*

Here, there is no medical expert opinion specific to the DAC period.  The ALJ found the State agency medical consultants' findings persuasive, (AR 65-66), but those evaluations took place in 2021 and specified that their RFC determinations were "[c]urrent" to those dates, (*id.* at 122-152.) *See Miller v. Comm'r of Soc. Sec.,* No. 20-3642, 2021 WL 3137439, at *2 (3d Cir. July 26, 2021) ("When a medical report does not address a claimant's condition during the relevant period, the report has 'little, if any, relevance to whether [the claimant] was disabled during that time.'") (quoting *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014)).  The ALJ nowhere acknowledges this point, nor does she otherwise delineate between the two time periods at issue. As a result, the Court is unable to identify the evidence she based her RFC analysis on with respect to the DAC period.

The Commissioner's only response is that Plaintiff holds the burden of establishing her RFC limitations, but—according to the Commissioner—Plaintiff does not allege her condition improved between 2015 and 2021 nor does she provide evidence that her condition was more

10

limited in 2015.  (ECF No. 12 at 9.)  The Court is unpersuaded by this argument.  "Although a claimant bears the burden of establishing her RFC, the ALJ makes the ultimate disability and RFC determinations."  *Louis*, 808 F. App'x at 117 (citations omitted).  And in making these determinations, the ALJ must enable a reviewing court "to trace the path of the ALJ's reasoning from evidence to conclusion." *Erica S. v. Comm'r of Soc. Sec. Admin.*, Civ. No. 20-6175, 2022 WL 1269788, at *6 (D.N.J. Apr. 28, 2022).  The Commissioner's briefing does not point to even a "mere scintilla" of evidence, *Hagans*, 694 F.3d at 292, that the ALJ relied on to allow the Court to trace the path of the ALJ's findings.  Instead, the Commissioner focuses on what was allegedly required of Plaintiff.  (*See* ECF No. 12 at 9.)  Even if this were the right inquiry, Plaintiff provided evidence relevant to the November 2015 DAC period.  (*See, e.g.*, ECF No. 10 at 10-11 (citing AR 314, 432-433, 476-477, 1878-1879, 1883); *see also* AR 83, 85, 95, 97-99.)  That evidence may be insufficient for the ALJ to determine Plaintiff was disabled during the DAC period, but it is for the ALJ to make that determination and for the Court to evaluate whether that decision was supported by substantial evidence.

In short, because the ALJ does not distinguish between the relevant time periods, and because the evidence she does rely on appears confined to only the SSI time period, the Court is unable to decipher the basis for her RFC finding with respect to the DAC period.  Accordingly, remand on the issue of whether Plaintiff was disabled during the DAC period is proper.  Thus, the Court's analysis of the remaining issues raised by Plaintiff will be limited to the SSI period.

### 2.    *The SSI Period*

Plaintiff argues that the RFC with respect to the SSI period was not supported by substantial evidence because the ALJ did not adopt the administrative findings of the State agency medical

11

consultants despite finding them persuasive. (ECF No. 10 at 25-26.)[10]  The Commissioner argues the ALJ did not, nor was she required to, "rubber stamp" the state agency findings even if she found them persuasive.  (ECF No. 12 at 8-10.)

Plaintiff does not challenge whether the ALJ applied the correct standards for evaluating medical opinions but instead challenges the connection between the State agency medical consultants' findings and the ALJ's RFC.  Plaintiff appears to argue that the RFC is not supported by substantial evidence because the ALJ simultaneously found the State agency's administrative findings persuasive yet diverged from those same findings.  (ECF No. 10 at 25.)  In particular, Plaintiff notes that the "State agency prior administrative findings purportedly adopted by the ALJ specified that [Plaintiff] could perform *light* exertional activity," but the ALJ's RFC limited Plaintiff to "*sedentary* exertional activity."  (*Id.* (emphasis in original).)  The Court does not find remand is warranted on this basis.

As an initial matter, an ALJ is permitted to find a medical opinion persuasive without adopting it in full.  *See Chandler*, 667 F.3d at 361-62 (finding ALJ properly considered medical opinion when the ALJ "did not merely rubber stamp [state doctor's] RFC conclusion").  Here, the ALJ explicitly qualified the persuasiveness of the state agency's findings.  (*See* AR 66 (ALJ stating that she "finds these prior administrative findings to be persuasive to the extent they are consistent with the residual functional capacity above").)  More fundamentally, the limitation in the ALJ's RFC (sedentary exertional activity) was *more favorable* to Plaintiff than was the State agency's

---

[10]     Plaintiff further argues that the RFC was not supported by substantial evidence because the ALJ failed to account for Plaintiff's migraines.  (ECF No. 10 at 25-27.)  The Court addresses the migraines issue separately.  *See infra* Section III.E.2.  Plaintiff also argues the ALJ made conflicting findings with respect to whether she accepted Plaintiff's subjective allegations of pain.  (ECF No. 10 at 26.)  Plaintiff raises a similar argument later in her briefing, (*see* ECF No. 10 at 29-33), so the Court addresses the treatment of Plaintiff's complaints in its own section.  *See infra* Section III.D.

limitation (light exertional activity).  *See* 20 C.F.R. § 404.1567(a)-(b).  Indeed, even though the State consultants determined Plaintiff "is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently," the ALJ found that "considering the record as a whole, including with the claimant's subjective allegations, the undersigned has reduced the claimant's lifting and carrying limitations to the sedentary exertional level."  (AR 65-66.)  Plaintiff's argument appears to boil down to the proposition that the difference between an ALJ's RFC and a persuasive medical opinion necessarily renders the ALJ's RFC unsupported by substantial evidence.  But the very example Plaintiff puts forth shows why that position—with nothing more—is untenable and in fact lends support for the opposite conclusion.  *See Chandler*, 667 F.3d at 361 (affirming ALJ's decision when ALJ "added restrictions [the State agency] did not deem necessary").

### B.      The ALJ's Evaluation of Medical Evidence

Plaintiff next argues that the "ALJ did not issue findings of persuasiveness, supportability, or consistency, as required by the regulations, before apparently relying on the opinion of consultative examining physician Dr. Bagner, resulting in harmful legal error and requiring remand."  (ECF No. 10 at 16.)  The error was harmful, Plaintiff contends, because "it contained the physician's opinion on [Plaintiff's] ability to perform physical demands of work activities, such as sitting, standing, [and] walking," (*id.* at 19-20 (quoting 20 C.F.R. § 404.1513(a)(2)), and the ALJ, by citing to Dr. Bagner's report, relied on his opinion, (*id.* at 20 (citing AR 66)).

The Commissioner argues that Dr. Bagner did not offer a "medical opinion" within the meaning of the regulations and therefore the ALJ had no obligation to make specific findings on the persuasiveness, supportability, or consistency of Dr. Bagner's statement.  (ECF No. 12 at 7.)  And even if Dr. Bagner's findings did constitute a medical opinion, the Commissioner argues that Dr. Bagner's report is consistent with the RFC so remand is improper.  (*Id.* at 7-8.)

"A medical opinion is a statement from a medical source about what you can still do despite your impairment(s)[.]"  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  By contrast, a separate category of medical evidence, labeled by the regulations as "[o]ther medical evidence," includes "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).  The two types of evidence do not overlap.  *See, e.g.,* 20 C.F.R. § 404.1513(a)(3) (stating that "[o]ther medical evidence" is "evidence from a medical source that is not . . . a medical opinion").  "[T]reatment recommendations [that are] not intended to express any opinion . . . as to what [a plaintiff] could or could not do on an ongoing basis with relation to [a plaintiff's] ability to work on a permanent basis" but instead are "short-term instructions to facilitate treatment" do not constitute medical opinions and are more properly characterized as "other medical evidence."  *See Luksic v. Comm'r of Soc. Sec.*, Civ. No. 23-1139, 2024 WL 1242313, at *10-11 (N.D. Ohio Mar. 22, 2024); *see also Mohssen v. Comm'r of Soc. Sec.*, Civ. No. 12-14501, 2013 WL 6094728, at *9 (E.D. Mich. Oct. 28, 2013) (finding four pages of notes "other medical evidence" when "they appear to contain basic clinical findings" such as plaintiff's "weight, blood pressure, pulse, temperature" rather than "an opinion on [the plaintiff's] functional limitations"); *Mark R. v. Comm'r of Soc. Sec.*, Civ. No. 21-00080, 2023 WL 2399622, at *8-9 (W.D.N.Y. Mar. 8, 2023) (finding statements that did not "express any opinion about what [p]laintiff could do or could not do on an ongoing basis despite . . . injury" did not constitute medical opinions); *Finn v. Comm'r of Soc. Sec.*, Civ. No. 21-5457, 2022 WL 4245196, at *8 (S.D.N.Y. Sep. 15, 2022) ("[T]he [r]ecord does not appear to contain a medical source opinion . . . *i.e.*, a statement about what [the plaintiff] could 'still do despite [his] impairment(s)' . . . . These prescriptive, rather than descriptive, statements do not qualify as medical opinion[s] whose

14

supportability and consistency the ALJ would have been required to assess") (quoting 20 C.F.R. § 404.1513(a)(2)).

If the medical evidence constitutes "other medical evidence" rather than a "medical opinion," then the ALJ is not required to analyze the persuasiveness, supportability, or consistency of that evidence. *Finn,* 2022 WL 4245196, at *8*; see also* 20 C.F.R. § 404.1520c(a) (requiring ALJs to explain supportability and consistency of "medical opinion[s]); *Zaborowski v. Comm'r of Soc. Sec.,* 115 F.4th 637, 638 (3d Cir. 2024) (*"*When weighing *medical opinions* in Social Security matters, administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions.") (first emphasis added); *Jacobs v. Kijakazi,* Civ. No. 22-826, 2023 WL 4144490, at *3 (W.D. Okla. June 22, 2023) ("When evaluating 'other medical evidence' the ALJ is not required to consider the 'medical opinion' factors.")

Here, Plaintiff saw Dr. Bagner for a one-time, twenty-five-minute consultative examination in December 2020. (*See* AR 1210-1215.) Dr. Bagner observed Plaintiff and reported that, *inter alia*, Plaintiff "ambulates with a walker" but "can ambulate without the walker;" "gets on and off the examining table without difficulty;" and "gets dressed and undressed without assistance." (*Id.* at 1211.) While the Court appreciates that the interactions between Plaintiff and Dr. Bagner were limited—as was Dr. Bagner's report—the Court finds that his notes nonetheless constitute a medical opinion. Dr. Bagner did not just record "basic clinical findings" such as plaintiff's "weight, blood pressure, pulse, temperature." *Mohsen*, 2013 WL 6094728, at *9. Instead, Dr. Bagner opined on Plaintiff's "functional limitations," *id.*, such as his view on Plaintiff's ability to ambulate with or without a walker, (AR 1211.) These "descriptive" statements about what Plaintiff "could still do despite [her] impairment(s)" constitute a medical opinion. *Finn*, 2022 WL 4245196, at *8.

15

Because Dr. Bagner gave a medical opinion, the ALJ was required to evaluate that opinion for persuasiveness. 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . medical findings in your case record.") And in doing so, the ALJ was required to "explain how [she] considered the supportability and consistency factors for [that] medical source's medical opinions." *Id.* § 404.1520c(b)(2). The ALJ did not examine Dr. Bagner's medical opinion for persuasiveness or explain the supportability and consistency factors. (*See* AR 64.) Nor does the Commissioner argue that she did. (ECF No. 12 at 6-8.) Accordingly, the ALJ erred.

The parties dispute whether this error was harmless. (ECF No. 10 at 19-21; ECF No. 12 at 7-8.) "An error is generally 'harmless' when, despite the technical correctness of a plaintiff's legal contention, there nonetheless remains 'no set of facts' supporting entitlement to benefits." *Mueller v. Kijakazi*, Civ. No. 21-233, 2023 WL 2245103, at *7 (E.D. Pa. Feb. 23, 2023) (quoting *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011)). "Stated differently, 'remand is not required . . . [if] it would not affect the outcome of the case." *Id.* (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 532 (2009).

Here, this is not the standard situation in which a plaintiff argues the ALJ failed to account for a *favorable* medical opinion to the plaintiff. *See, e.g.*, *Wrights v. Colvin,* Civ. No. 13-02516, 2015 WL 2344948 at *9-11 (M.D. Pa. May 14, 2015) (finding harmless error when unaccounted for medical opinion that was favorable to the plaintiff did not conflict with the RFC); *Pipkin v. Kijakazi*, Civ. No. 22-2, 2023 WL 411291, at *1 n.2 (M.D. Pa. Jan. 25, 2023) (finding harmless error when ALJ conflated supportability and consistency but the medical opinion favorable to plaintiff was not substantiated by evidence in the record); *Tina D. v. Kijakazi*, Civ. No. 22-0084,

2023 WL 6842444, at *7 (D.N.J. Oct. 17, 2023) (finding failure "to further discuss the regulatory factors of consistency and supportability [to be], at worst, harmless"). Instead, Plaintiff seeks to discount an *unfavorable* medical opinion on which the ALJ allegedly relied. Namely, Plaintiff contests the use of Dr. Bagner's opinion that Plaintiff could ambulate without a walker. (ECF No. 10 at 20.) However, as the Commissioner highlights, the ALJ's RFC did not draw on this finding and instead found Plaintiff was limited to sedentary work. (ECF No. 12 at 7-8 (citing AR 60).)[11] Thus, while the instant matter is unique in that Plaintiff challenges the treatment of an unfavorable medical opinion, the common thread in the harmless error cases—that the improperly accounted for medical opinions did not change the outcome—is equally apparent here. *See Wrights,* 2015 WL 2344948 at *9-11; *Pipkin*, 2023 WL 411291, at *1 n.2; *Tina D.*, 2023 WL 6842444, at *7. The Court therefore finds Plaintiff has failed to satisfy her burden of demonstrating harmful error and will not remand on these grounds. *Mueller*, 2023 WL 2245103, at *7.

### C.      The ALJ's Evaluation of Third-Party Lay Evidence

Plaintiff next argues that the ALJ failed to explicitly discuss Plaintiff's parents' written letter dated January 8, 2024. (ECF No. 10 at 27 (citing AR 379-380).) The Commissioner argues this failure does not require remand. (ECF No. 12 at 12.) The Court agrees with the Commissioner.

---

[11]      The Court recognizes the ALJ opined "that there is no indication that the claimant requires an assistive device for ambulation." (AR 65.) However, there is similarly no indication that the ALJ incorporated this finding into the RFC formulation, nor did it affect the vocations which the ALJ found Plaintiff could undertake. (*Id.* at 60, 67.) Further, when the ALJ explained why the record contained no indication that Plaintiff required an assistive device, she stated that "[a]lthough treatment notes reflect the use of a walker at times, treatment notes also regularly reflect that the claimant had a normal gait. In addition, she was noted to have 5/5 strength in the upper and lower extremities bilaterally." (*Id.* at 65.) These arguments suggesting Plaintiff did not need an assistive device are based on evidence in the record independent from Dr. Bagner's opinion. (*See, e.g., id.* at 400 (finding Plaintiff has "[n]ormal motor" and "normal gait"); *id.* at 442 (finding Plaintiff "has 5/5 strength x4 extremities").) Thus, Plaintiff's position that "the ALJ . . . appears to have implicitly relied on Dr. Bagner's opinion when rejecting [Plaintiff's] allegations of needing a walker to ambulation," (ECF No. 10 at 20), is unpersuasive.

An ALJ must "consider all the evidence, and give an opinion from which the Court can assess [her] reasons and tell why significant probative evidence that would seem to undermine [her] decision did not undermine it." *Stephens v. Comm'r of. Soc. Sec. Admin.*, Civ. No. 09-2394, 2010 WL 2546027, at *8 (D.N.J. June 21, 2020) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). But "an ALJ need not explicitly discuss every piece of relevant evidence in [her] decision." *Id.* (citing *Fargnoli*, 247 F.3d at 34); *see also Phillips v. Barnhart*, 91 F. App'x. 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") Indeed, "[t]he Court must take the ALJ's word that [she] reviewed all of the evidence in the record." *Lana T. v. Comm'r of Soc. Sec.*, Civ. No. 22-5191, 2026 WL 241914, at *4 n.3 (D.N.J. Jan. 29, 2026) (citing *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at his word[.]")). And, in any event, when discounted third-party evidence mirrors a plaintiff's evidence which the ALJ did consider, remand is improper. *See Crosby v. Barnhart,* 98 F. App'x 923, 926 (3d Cir. 2004) ("[P]laintiff contends that it was error for the ALJ to reject her fianc[é]'s affidavit detailing her daily physical limitations. We need not dwell on this issue, because any error, if present, was harmless. The fianc[é]'s description of [plaintiff's] limitations mirrored her own description, which the ALJ considered.").

Here, the Court finds remand is improper as to this issue. The ALJ stated she reviewed all of the evidence in the record. (*See* AR 56 ("After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability . . . .").) The Court must accept, as fact, that the ALJ considered all the evidence in the record. *See Lana T.*, 2026 WL 241914, at *4 n.3. Plaintiff is correct that the ALJ does not cite Plaintiff's parents' written testimony from January 8, 2024. (*See generally* AR at 55-67.) However, failure to cite this two-page letter—

amidst an Administrative Record of nearly 2,000 pages—does not constitute error. *Stephens*, 2010 WL 2546027, at *8.

But even if it did constitute error, any such error would be harmless. Plaintiff argues that failure to cite to the letter is not harmless because it "discuss[ed] her incontinence[.]" (ECF No. 13 at 29.)[12] However, Plaintiff also discussed her incontinence, and the ALJ incorporated her testimony into her decision. (*See, e.g.*, AR 61 ("It was noted that [Plaintiff] had been having urinary incontinence . . . ."); *id.* ("[Plaintiff] noted that she had a urinary tract infection due to incontinence"); *id.* ("The claimant reported that she is sick in bed with vertigo, dizziness, incontinence, and depression on a bad day").) Accordingly, failure to cite this letter does not require remand. *Crosby*, 98 F. App'x at 926.

### D.     The ALJ's Evaluation of Plaintiff's Subjective Allegations of Pain Concerning Spinal Impairments

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's allegations of pain with respect to her spinal impairments. (ECF No. 10 at at 29-33). The Commissioner responds that the ALJ followed the requisite two-step inquiry, and her findings were supported by substantial evidence. (ECF No. 12 at 10-13.)

When "an individual alleges impairment-related symptoms," [13] ALJs "must evaluate those symptoms using a two-step process." SSR 16-3p, 2017 WL 5180304, at *2. First, ALJ's "must consider whether there is an underlying medically determinable physical or mental impairment(s)

---

[12]     Plaintiff also argues failure to cite the letter was harmful error because the letter discussed "the use of an assistive device." (ECF No. 10 at 29.) The letter confines its assistive device discussion to 2014 and 2015, but these years are relevant to the DAC, not SSI, analysis. (*See* AR 379.) As explained in this Opinion, the Court is remanding as to the ALJ's analysis of whether Plaintiff was disabled during the DAC period.

[13]     "[A] symptom [is defined as] the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2.

that could reasonably be expected to produce an individual's symptoms, such as pain . . . shortness of breath, [or] weakness[.]"  *Id.*  at *3.  "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [ALJs must] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*

When evaluating the intensity and persistence of the symptoms at step two, the ALJ must "consider all of the evidence in an individual's record."  *Id.* at *2.  An ALJ must "not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled."  *Id.* at *5.  If an ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then [the ALJ must] carefully consider other evidence in the record" including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms."  *Id.* at *6; *see also* 20 C.F.R. §§ 404.1513, 416.913 (listing types of evidence); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (explaining how ALJs must evaluate subjective complaints of pain).  Statements from the individual include "statements about symptoms directly to medical sources, other sources, or he or she may make them directly to [the ALJ]."  SSR 16-3p, 2017 WL 5180304, at *6.

Here, Plaintiff argues the ALJ did not apply these standards because "the ALJ failed to explain why [Plaintiff's] allegations were rejected in light of [the] evidence" of spinal impairments. (ECF No. 10 at 30.)  This is incorrect.  After finding step one satisfied, the ALJ considered objective medical evidence as well as other evidence specific to spinal impairments, including Plaintiff's testimony and reports of pain, and the ALJ determined that "the evidence fails to support

the claimant's assertions of total disability." (*See* AR 60-62, 64-66.)  For example, in 2017, Plaintiff described her back pain as "moderate."  (*Id.* at 63 (citing AR 632-633).)  In 2020 and 2021, Plaintiff reported that her back pain was a "5/10 on average after medications."  (*Id.* at 64 (citing AR 1624).)  In 2023, Plaintiff reported that "her chronic back pain was controlled" with medication.  (*Id.* at 65 (citing 1830.)  And the State agency medical consultants found Plaintiff could "lift and/or carry 20 pounds occasionally and 10 pounds frequently."  (*Id.* (citing AR 1830).)  It is true there is evidence in the record supporting Plaintiff's subjective complaints of pain with respect to spinal impairments, but "the Court's only task is to determine whether the ALJ's decision was supported by substantial evidence, and the Court cannot re-weigh the evidence."  *Mary L. v. Comm'r of Soc. Sec.*, Civ. No. 24-10716, 2025 WL 3764875, at \*10 (D.N.J. Dec. 30, 2025) (citing *Chandler*, 667 F.3d at 359).  The Court is satisfied that the ALJ followed the requisite two-step process, and her finding was supported by substantial evidence.

**E.      The ALJ's Consideration of Plaintiff's Obesity and Migraines**

Finally, Plaintiff raises challenges specific to two types of impairments: obesity and migraines.  The Court addresses each in turn.

**1.      *Obesity***

Plaintiff argues that "the ALJ provided [insufficient] discussion of the interaction of obesity and [Plaintiff's] impairments."  (ECF No. 10 at 33.)  The Court disagrees.

When an ALJ finds obesity to be a severe impairment at step two of the five step sequence, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step."  *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (remanding when the ALJ provided no "discussion of the combined effect of [the plaintiff's] impairments") (citing SSR 02-

1p (Titles II and XVI: Evaluation of Obesity), 2002 WL 34686281 (Sep. 12, 2002)).[14]  "[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so."  *Gainey v. Astrue*, Civ. No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) (citation omitted).  This district has found an ALJ's obesity analysis sufficient when, for example, the ALJ's opinion stated:

> Treatment records noted the claimant stood 5' 6" tall and weighed 195 pounds with a [Body Mass Index] of 31.7. I have considered the effect of obesity on the claimant's other impairments . . . . In combination with her other impairments and consistent with her testimony, obesity affects her exertional ability to the degree that she can do no more than sedentary work.

*Cherese M. B. v. Comm'r of Soc. Sec.*, Civ. No. 20-17718, 2024 WL 1270834, at *6 (D.N.J. Mar. 26, 2024).  In *Cherese M. B.*, the court found that the ALJ did enough given that the ALJ "recognized that [the plaintiff's] obesity 'in combination' with her other impairments' affected her exertional ability" and also "specifically addressed her other physical limitations," such as back and knee pain, which were "areas where obesity is most likely to compound." *Id.* at *7.

Here, the ALJ found Plaintiff's obesity to be a severe impairment at step two.  (AR 59.) Like in *Cherese M. B.*, the ALJ noted Plaintiff's weight and Body Mass Index and explained that she considered obesity in combination with other impairments.  (*See* AR 62 ("[Plaintiff] was noted to weigh more than 300 pounds" and "had Body Mass Index of 52.25"); *id.* at 58-59 ("The undersigned has evaluated obesity pursuant to the detailed guidelines . . . . [T]he undersigned has fully considered obesity in the context of the case record.").)  And, as discussed in this Opinion,

---

14      SSR 19-2p, (Titles II and XVI: Evaluating Cases Involving Obesity), 2019 WL 2374244 (May 20, 2019), rescinded and replaced SSR 02-1p, effective May 20, 2019. *See Jesus O. v. O'Malley*, Civ. No. 22-5637, 2024 WL 4318604, at * 12 (D.N.J. Sep. 22, 2024).  Nonetheless, SSR 19-2p—like SSR 02-1-p—still requires ALJs to consider obesity in combination with other impairments when formulating the RFC. *See* 2019 WL 2374244, at *4.

22

the ALJ "specifically addressed [Plaintiff's] other physical limitations"—here, for example, spinal impairments—for which "obesity is most likely to compound." *Cherese M. B.*, 2024 WL 1270834, at *7. *See supra* Section III.D. Ultimately, as in *Cherese M. B.*, the ALJ limited Plaintiff to "sedentary" work, (AR 60), which is the "lowest level of physical exertion" of any job category, *Zirnsak v. Colvin*, 777 F.3d at 620. Given that the ALJ explicitly discussed Plaintiff's obesity, stated she considered obesity in connection with other impairments, thoroughly analyzed the other impairments that are likely to compound with obesity, and ultimately confined Plaintiff to sedentary work, the Court does not find that the ALJ erred or erred in any way that would be more than harmless.

### 2.    *Migraines*

Plaintiff argues that "the ALJ's decision does not mention SSR 19-4p [Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 2019 WL 4169635 (Aug. 16, 2019)], governing the evaluation of primary headache disorders[,] [n]or does the decision explain how the severe impairment was considered in evaluating [Plaintiff's] subjective allegations or determining her RFC." (ECF No. 10 at 26.) The Commissioner responds that the ALJ's consideration of Plaintiff's migraines was sufficient. (ECF No. 12 at 9.) The Court finds remand is proper.

At step three of the sequential evaluation, the ALJ is required to evaluate whether Plaintiff "suffers from an impairment or combination of impairments that meets or equals a listed impairment[.]" *McCrea*, 370 F.3d at 360. SSR 19-4p explains how to "evaluate primary headache disorders," which include migraines, at this third step. 2019 WL 4169635, at *1-2. "Although there is no separate Listing for primary headache disorder, the SSR directs use of Listing 11.02 (Epilepsy) to evaluate a primary headache disorder, specifically paragraphs B and D of Listing 11.02." *Lessig v. O'Malley*, Civ. No. 22-3170, 2024 WL 1604607, at *12 (E.D. Pa. Apr. 12, 2024) (citing SSR 19-4p, 2019 WL 4169635, at *7).

23

To meet the requirements of Listing 11.02B, a plaintiff must have migraines "occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02(B).  In considering whether a primary headache disorder equals the severity and duration of the criteria of Listing 11.02B, an ALJ must consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations.).

SSR 19-4p, 2019 WL 4169635, at *7.

In the alternative, to meet the requirements of Listing 11.02D, a plaintiff must have migraines "occurring at least once every 2 weeks for at least 3 consecutive months . . . despite adherence to prescribed treatment . . . and a marked limitation in one of the [areas of functioning]." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02(D).  In considering whether a primary headache disorder meets the criteria of Listing 11.02D, an ALJ must "consider[] the same factors [she] consider[s] for 11.02B and [she] also consider[s] whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself."  SSR 19-4p, 2019 WL 4169635, at *7.

When an ALJ fails to "discuss or even cite Listing 11.02B or 11.02D," such an "omission, standing alone, is not dispositive."  *Tyson v. Kijakazi*, Civ. No. 21-855, 2022 WL 3975002, at *10 (M.D. Pa. July 25, 2022), *report and recommendation adopted*, 2022 WL 3971041 (M.D. Pa. Aug.

24

31, 2022).  "Although it would be preferable for an ALJ 'to specifically identify the listed impairments under consideration,' the failure to do so is not reversible error where the court can 'discern the particular listed impairments considered' based on the ALJ's discussion of the relevant evidence" and the conclusion is supported by substantial evidence.  *Id.* (quoting *Arroyo v. Comm'r of Soc. Sec.*, 155 F. App'x 605, 608 (3d Cir. 2005).  Thus, "an ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."  *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008).  However, when an ALJ fails to "make findings needed to determine if [a plaintiff] satisfied the criteria of Listing 11.02B [or Listing 11.02D]" and "the record reflects evidence that would tend to support application of [those Listings]," then the "case should be remanded" because the ALJ's opinion is "beyond meaningful judicial review."  *Tyson*, 2022 WL 3975002, at *15 (citing *Burnett*, 220 F.3d at 119); *see also Marielena R. v. Dudek*, Civ. No. 24-1006, 2025 WL 834751, at *7 (E.D. Pa. Mar. 17, 2025) (remanding when ALJ cited SSR 19-4p but "the entirety of his medical equivalence discussion was comprised of two sentences that did not mention the factors SSR 19-4p identified as relevant" and the ALJ "failed to acknowledge [p]laintiff's testimony" suggesting she had migraines meeting the requirements of the Listing).

Here, the Court finds that remand is proper.  The ALJ nowhere cites SSR 19-4p or Listing 11.02. (*See generally* AR 52-67.)  It is true that these omissions are not dispositive.  *Tyson*, 2022 WL 3975002, at *10.  Even so, the ALJ fails to analyze the factors necessary for the Court to determine whether Plaintiff's migraines—a severe medical impairment according to the ALJ (AR 58)—support application of either Listing.  *Marielena R.*, 2025 WL 834751, at *7; *Tyson*, 2022 WL 3975002, at *15.  With respect to Listing 11.02B, for example, the two main factors are (1)

25

the frequency of the headaches and (2) the effect of the prescribed treatment plan. *Tyson*, 2022 WL 3975002, at *11-12. But the ALJ makes only passing references to the frequency of Plaintiff's migraines and the effect of the treatment plan. The ALJ noted that in April 2023, Plaintiff reported that "her headaches were controlled," (AR 65), but just a few months later "reported having migraines a couple of times per week," (*id.*). The ALJ discussed no other evidence relevant to the Listing 11.02B factors. Based on this information, the Court has no way of reviewing the ALJ's step three decision, and from the information the Court does have, there is evidence "that would tend to support application of" Listing 11.02B, *Tyson*, 2022 WL 3975002, at *15, which requires migraines "occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment," 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02(B). "Since the error is not harmless, in as much as Plaintiff's migraine frequency suggests she might equal Listing § 11.02, remand is warranted." *Marielena R.*, 2025 WL 834751, at *7.[15]

## IV.  CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **VACATED** and **REMANDED**. An appropriate Order follows.

Dated: March 31, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[15]  Because the Court remands on the migraines issue at step three, the Court need not evaluate whether the ALJ's consideration of Plaintiff's migraines at step four requires reversal. *See Andrew S. v. Comm'r of Soc. Sec.*, Civ. No. 18-17212, 2022 WL 795746, at *3 (D.N.J. Mar. 16, 2022) ("Because the Court agrees that the ALJ erred at step three of the sequential analysis, the Court will not consider the other arguments with respect to steps four and five." (citing *Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x. 155, 156-57 (3d Cir. 2008)).